BRIAN M. LUTZ, SBN 255976
    blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

STEPHEN C. WHITTAKER, SBN 283518
    cwhittaker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:    949.451.3800
Facsimile:    949.451.4220

CARY G. PALMER, SBN 186601
    cary.palmer@jacksonlewis.com
NATHAN W. AUSTIN, SBN 219672
    nathan.austin@jacksonlewis.com
JACKSON LEWIS P.C.
400 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone:    916.341.0404
Facsimile:    916.341.0141

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILIO PADILLA, individually, and on behalf of aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"); | CASE NO. 5:21-cv-883 |
| | **DEFENDANTS' NOTICE OF REMOVAL** |
| Plaintiff, | Complaint Filed:   April 2, 2021 |
| v. | (Removal from the Superior Court of California for the County of Riverside, Case No. CVRI2101608) |
| PRIMERICA, INC., a Delaware corporation; PRIMERICA CLIENT SERVICES, INC., a Delaware corporation; PRIMERICA FINANCIAL SERVICES INSURANCE MARKETING, INC., a Delaware Corporation; PRIMERICA CONVENTION SERVICES, INC., a Georgia Corporation; PRIMERICA FINANCIAL SERVICES, LLC, a Nevada limited liability company; PRIMERICA LIFE INSURANCE COMPANY, a Tennessee corporation; and DOES 1 through 100, inclusive; | |
| Defendants. | |

Gibson, Dunn &
Crutcher LLP

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF EMILIO PADILLA AND HIS COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332 and 1441, Defendants Primerica, Inc. ("Primerica"); Primerica Client Services, Inc. ("Client Services"); Primerica Financial Services Insurance Marketing, Inc. ("PFSIM"); Primerica Convention Services, Inc. ("Convention Services"); Primerica Financial Services, LLC ("PFS"); and Primerica Life Insurance Company ("PLIC") (collectively, "Defendants") hereby remove to the United States District Court for the Central District of California the above-captioned state court action, originally filed as Case No. CVRI2101608 in Riverside County Superior Court, State of California.

## I.    FACTUAL BACKGROUND

1.    Plaintiff Emilio Padilla ("Plaintiff") filed his Complaint in the Riverside County Superior Court on April 2, 2021.  A copy of the Complaint was served on Defendants on or about April 23, 2021.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Complaint, (b) Civil Case Cover Sheet, (c) Certificate of Counsel, (d) Summons, (e) Notice of Department Assignment, (f) Notice of Case Management Conference, (g) Proof of Service on Complaint, and (h) second Proof of Service on Complaint are attached as Exhibits A through H to the Declaration of Brian Lutz ("Lutz Decl."), filed concurrently herewith.

2.    Plaintiff alleges in the Complaint that Defendants have misclassified Plaintiff as an independent contractor, and thereby have violated various California state laws by failing to pay Plaintiff and other similarly-situated individuals meal and rest break wages, failing to pay minimum wage and overtime, failing to provide accurate wage statements, and failing to reimburse business expenses. *See*, *e.g.*, Compl. ¶ 3.[1]

---

[1] Plaintiff is properly classified as an independent contractor.  Indeed, Primerica has received numerous favorable decisions from courts, the Internal Revenue Service, the United States Department of Labor, and other agencies holding that Primerica's sales agents—like Plaintiff—are properly classified as independent contractors.  Moreover, Primerica's agents are not subject to California's ABC test for worker classification because, among other reasons, they are subject to the exemptions for licensed sellers of life insurance, registered sellers of securities, and/or direct sales salespersons. *See* Cal. Lab. Code §§ 2783(a),(d), (e).  Nevertheless, for purposes of this removal, the Court and the parties must assume that Plaintiff will prevail on the merits of his claims. *See Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

3.      Plaintiff purports to bring this action under California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*, which permits individuals to collect civil penalties for violations of the California Labor Code.  Cal. Lab. Code § 2699(a).  Plaintiff purports to bring this action on behalf of himself and "all current or former employees of Defendants who worked for Defendants at any time during the period from March 29, 2020 to the present."  Compl. ¶ 17.

4.      Before filing this action, Plaintiff sent a letter to the California Labor and Workforce Development Agency ("LWDA") on or around March 29, 2021 (the "LWDA Notice Letter") alleging that Defendants are liable for civil penalties for the violation of enumerated labor code provisions, and informing the LWDA that he intended to "seek these penalties and wages on his own behalf and on behalf of other similarly situated California-based independent contractors."  LWDA Notice Letter at 7.[2]  Plaintiff's LWDA Notice Letter is attached as an exhibit to and is "incorporated by reference" into Plaintiff's complaint.  Compl. ¶ 16.

5.      Plaintiff's Complaint and LWDA Notice Letter both allege that Defendants are liable for PAGA civil penalties stemming from the following California Labor Code provisions:  Cal. Labor Code §§ 201, 202, 203, 204, 218.5, 224, 226(a), 226.3, 226.7, 226.8, 510, 512(a), 558, 1174(d), 1194, 1197, 1197.1, 1198, 2800, and 2802.  Compl. ¶ 1; LWDA Notice Letter at 3.

## II.      THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

6.      This case is removable under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  Defendants deny Plaintiff's factual allegations and deny that he or any of the individuals on whose behalf he is pursuing this action are entitled to the relief requested.  *See Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability.").  However, for purposes of this removal only, Defendants assume Plaintiff's allegations are true.

---

[2] Plaintiff admits that he did not comply with statutory pre-suit notice requirements under PAGA. Compl. ¶ 16.  Specifically, Plaintiff did not wait the statutorily-required 65 days to allow the LWDA to respond to his written notice before filing suit.  *See* Cal. Lab. Code § 2699.3(a)(1)(A).  Defendants reserve the right to seek dismissal of Plaintiff's premature lawsuit on this or any other available ground.

**A.      There Is Complete Diversity of Citizenship**

7.      "The district courts shall have original jurisdiction of all civil actions … between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  Here, Plaintiff is a citizen of California, whereas no Defendant is a citizen of California.  Therefore, this action is a dispute between citizens of different states within the meaning of section 1332(a)(1).

**i.      Plaintiff Is a Citizen of California**

8.      For diversity purposes, a person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  "A person's domicile is [his] permanent home, where []he resides with the intention to remain or to which []he intends to return." *Id.* at 857.  A defendant's allegation of citizenship in a notice of removal based on diversity jurisdiction may be based solely on information and belief.  *Ehrman v. Cox Comm., Inc.*, 932 F.3d 1223 (9th Cir. 2019) (citing *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014)).

9.      Plaintiff alleges that he "is an individual residing in the State of California."  Compl. ¶ 9.  Moreover, Defendants understand that Plaintiff has a California-issued driver's license, thus indicating an intent to remain in the state.  Therefore, Plaintiff is a citizen of the state of California for the purposes of 28 U.S.C. § 1332.

**ii.      Defendants Are Citizens of Delaware, Georgia, and Tennessee**

**a.      Primerica, Inc. is a citizen of Delaware and Georgia**

10.     "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center.'"  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

11.     Defendant Primerica is incorporated under the laws of the State of Delaware and its principal place of business is located in the State of Georgia.  Therefore, Primerica is a citizen of Delaware and Georgia for purposes of determining diversity.  *See* 28 U.S.C. § 1332(a).

1
        **b.**      **Primerica Client Services, Inc. is a citizen of Delaware and Georgia**

2
        12.    Defendant Client Services is incorporated under the laws of the State of Delaware and

3
its principal place of business is located in the State of Georgia.  Therefore, Client Services is a citizen

4
of Delaware and Georgia for purposes of determining diversity.  *See* 28 U.S.C. § 1332(a).

5
        **c.**      **Primerica Financial Services Insurance Marketing, Inc. is a citizen of Del-**

6
                                     **aware and Georgia**

7
        Defendant PFSIM is incorporated under the laws of the State of Delaware and its principal

8
place of business is located in the State of Georgia.  Therefore, PFSIM is a citizen of Delaware and

9
Georgia for purposes of determining diversity.  *See* 28 U.S.C. § 1332(a).

10
        **d.**      **Primerica Convention Services, Inc. is a citizen of Georgia**

11
        Defendant Convention Services is incorporated under the laws of the State of Georgia and its

12
principal place of business is located in the State of Georgia.  Therefore, Convention Services is a cit-

13
izen of Georgia for purposes of determining diversity.  *See* 28 U.S.C. § 1332(a).

14
        **e.**      **Primerica Financial Services, LLC is a citizen of Delaware and Georgia**

15
        13.    "[A]n LLC is a citizen of every state of which its owners/members are citizens." *John-*

16
*son v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also* 28 U.S.C.

17
§ 1332(a).

18
        14.    PFS is a wholly-owned subsidiary of Primerica, Inc., and thus PFS's citizenship is iden-

19
tical to Primerica's.  As discussed above, Primerica, Inc. is a corporation incorporated under the laws

20
of Delaware with its principal place of business in Georgia, *supra* ¶¶ 10–11, so PFS is a citizen of

21
Delaware and Georgia for purposes of determining diversity, 28 U.S.C. § 1332(a).

22
        **f.**      **Primerica Life Insurance Company is a citizen of Tennessee and Georgia**

23
        15.    Defendant PLIC is a incorporated under the laws of the State of Tennessee and its prin-

24
cipal place of business is located in the State of Georgia.  Therefore, PLIC is a citizen of Tennessee

25
and Georgia for purposes of determining diversity.  *See* 28 U.S.C. § 1332(a).

26
        16.    Accordingly, at the time the Complaint was filed and at the time of removal, there was

27
and is complete diversity of citizenship between Plaintiff and all Defendants as "citizens of different

28
States." 28 U.S.C. § 1332(a)(1).

**B.     The Amount in Controversy Exceeds $75,000**

17.     Plaintiff's alleged claims seek various statutory penalties and other remedies.  Regardless of how those alleged damages may be calculated, the amount in controversy raised by those claims far exceeds the $75,000 jurisdictional amount.  Whether Plaintiff's potential damages for purposes of removal include the full alleged value of his individual claims, or only 25% of that value as some courts have found, the result is the same.  Using either method, the alleged value of this case is well over $75,000.

18.     Courts evaluate a removing defendant's assertion of the amount in controversy under a "preponderance of the evidence" standard.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); 28 U.S.C. § 1446(c)(2)(B).  Although "[u]sually, 'preponderance of the evidence' is a phrase used for determining whether a factual allegation is, in fact, true," "a defendant is not required to admit, and is certainly not required to *prove*, the truth of plaintiff's assertions before invoking diversity jurisdiction."  *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1040 (N.D. Cal. 2014).  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Lewis*, 627 F.3d at 400; *see also McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (cited with approval in *Lewis*) ("The amount in controversy is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").

19.     A removing defendant is not required to "'research, state, [or attempt to] prove the plaintiff's claims for damages.'"  *Lippold v. Godiva Chocolatier, Inc.*, 2010 WL 1526441, at *3 (N.D. Cal. Apr. 15, 2010) (internal citations omitted).  Instead, a removing defendant may make a "reasonable extrapolation[] from the plaintiff's allegations suffic[ient] to establish the amount in controversy."  *Patel*, 58 F. Supp. 3d at 1041; *see also, e.g.*, *Lippold*, 2010 WL 1526441, at *3 (finding it reasonable for defendant to assume that plaintiff worked "13 hours a day every day that plaintiff worked for" defendant, because plaintiff alleged that he "regularly and/or consistently worked in excess of 12 hours per day"); *Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 WL 6382049, at *3 (C.D. Cal. Dec. 6, 2018) (noting that "defendants who prepare a 'well-founded evidentiary record' are entitled to make 'reasonable extrapolations' from the allegations in the complaint").

Gibson, Dunn &
Crutcher LLP

20.     Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'"  *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).  Thus, Defendants need only make "a plausible allegation" that the amount in controversy exceeds the jurisdictional threshold, which should be accepted unless contested by Plaintiff or questioned by the Court.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553–54 (2014).  Defendants reserve the right to present evidence further establishing the amount placed in controversy by Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied.  *See id.* at 554 ("Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation" that the amount in controversy exceeds the jurisdictional threshold).

21.     For purposes of determining the amount of controversy in a PAGA action, courts in this circuit evaluate the share of civil penalties attributable to the named plaintiff individually, exclusive of the penalties attributable to other workers on whose behalf the named plaintiff also seeks to recover.  *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020).  In other words, only damages attributable to violations that Plaintiff himself allegedly experienced are analyzed in determining the amount in controversy.

22.     PAGA permits aggrieved employees to recover civil penalties for California Labor Code violations.  Cal. Lab. Code § 2699(a).  PAGA employs a two-tiered structure for determining the amount of the civil penalties recoverable.  First, for violations of Labor Code provisions that *themselves* carry a specified civil penalty, PAGA permits the plaintiff to recover that stated civil penalty.  *Id.* § 2699(e).  Second, for violations of Labor Code provisions that *do not* specify a civil penalty, PAGA "establishe[s] a civil penalty" of "one hundred dollars ($100) for each aggrieved employee per pay

period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." *Id.* § 2699(f).[3]

23. PAGA civil penalties are cumulative for purposes of assessing the amount in controversy. Thus, civil penalties recoverable for each section of the California Labor Code allegedly violated can be independently counted toward the amount in controversy, and if the same Labor Code provision is allegedly violated multiple times, each alleged violation contributes independently to the amount in controversy.[4] *See, e.g., Cordero v. C.R. England, Inc.*, 2021 WL 1225952, at *2 (C.D. Cal. Mar. 31, 2021) (approving amount-in-controversy calculation ascribing penalties to multiple statutory violations of the same general category—*e.g.*, failure to provide rest breaks); *Mitchell v. Grubhub Inc.*, 2015 WL 5096420, at *3 (C.D. Cal. Aug. 28, 2015); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010); *Dunlap v. Superior Court*, 142 Cal. App. 4th 330 (2006) ("An employer is potentially liable for unpaid wages and interest, statutory penalties and civil penalties for many violations of California's Labor Code wage-and-hour provisions. For example, an employee not fully paid upon discharge or layoff as required by Lab. Code, § 201, may be entitled to recover not only unpaid wages but also the statutory penalty provided by Lab. Code, § 203, and the civil penalty provided by Lab. Code, § 256."). Here, the complaint's prayer for relief puts civil penalties in controversy for each statute alleged to be violated—even if overlapping—because it specifically requests that the Court impose civil penalties for violations of each statute. Compl. at 8 (Prayer for Relief ¶ 1: seeking "civil penalties pursuant to statute . . . for Defendants' violations of Labor Code §§ 201, 202, 203, 204, 218.5, 224, 226(a), 226.3, 226.7, 226.8, 510, 512(a), 558, 1174(d), 1194, 1197, 1197.1, 1198, 2800, and 2802"). "Plaintiff cannot use PAGA civil penalties as both a sword and a shield by requesting in [his] [complaint] that PAGA penalties be awarded for each of" the alleged statutory violations "and then

---

[3] The Ninth Circuit recently held that PAGA's $200 penalty for "subsequent" violations does not apply unless and until a defendant has been "notified by the Labor Commissioner or [a] court" that it is in violation of the Labor Code. *Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157, 1173 (9th Cir. 2021). Since courts, agencies, and arbitral forums have consistently affirmed that Defendants properly classify workers like Plaintiff as independent contractors, Defendants for the purposes of this notice removal assume only the lower "initial violation" fees.

[4] Defendants reserve the right to argue that PAGA penalties should not be "stacked" and a plaintiff can recover only one PAGA penalty per pay period. Defendants also reserve the right to argue that a plaintiff cannot recover two penalties for the same violation category, even if the alleged practice violates multiple Labor Code sections.

DEFENDANTS' NOTICE OF REMOVAL

Gibson, Dunn & Crutcher LLP

arguing that Defendant cannot aggregate PAGA penalties . . . for purposes of calculating the amount in controversy." *Schiller*, 2010 WL 2793650, at *6.

24.     The statute of limitations on a PAGA claim is one year, which is tolled for 65 days from the date that the plaintiff provides notice to the LWDA of intent to file a lawsuit seeking penalties.  Cal. Code Civ. Proc. § 340(a); Cal. Lab. Code § 2699.3(a)(2)(A).  Here, Plaintiff filed his complaint on April 2, 2021, and he seeks to recover for alleged PAGA violations dating from March 29, 2020—the date of his LWDA Notice Letter—at least "until in or about January of 2021," when he alleges that he stopped performing work for Defendants.  Compl. ¶ 17; LWDA Notice Letter at 4.  Thus, Plaintiff's complaint seeks to recover civil penalties for the approximately 40 workweeks between March 29, 2020 and the first week of January, 2021.

25.     Plaintiff does not state the precise frequency with which Defendants allegedly violated each Labor Code provision raised in his complaint.  However, Plaintiff alleges without qualification that Defendants' alleged violations constituted "*systemic* illegal employment practices" (Compl. ¶ 2 (emphasis added)) and that Defendants engaged in a continuing "policy and practice" of Labor Code violations (*id.* ¶¶ 19, 21, 23, 29).  To be clear, Defendants deny that they engaged in *any* Labor Code violations.  But because a plaintiff's allegations are treated as true for purposes of determining the amount in controversy, Defendants assume a violation rate of only <u>one</u> missed minimum wage, over-time, meal period, rest period, and unreimbursed business expense per workweek, for a total of 40 of each type of alleged unlawful practice.  These assumptions are conservative, and courts routinely find they are "reasonable" in the face of allegations like Plaintiff's here.  *See, e.g., Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (noting that courts "routinely apply a 20% violation rate . . . for meal and rest period premiums"); *Baker v. Propak Logistics, Inc.*, 2019 WL 4168998, at *5 (C.D. Cal. Sept. 3, 2019) (finding assumptions of a 40% meal break violation rate and 20% rest break violation rate reasonable because "an allegation of 'pattern and practice' of violations . . . impl[ies] that violations occurred routinely and frequently, and not occasionally or sporadically"); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding assumption of a 60% violation rate reasonable where plaintiff alleged that defendant had a "policy and practice of meal and

1  rest period violations"); *Torrez v. Freedom Mortg. Corp.*, 2017 WL 2713400, at \*4 (C.D. Cal. June 22,

2  2017) (finding assumption of a 40% violation rate reasonable).

3       26.    Further, many violations for which Plaintiff seeks to recover in his PAGA action carry

4  a range of potential civil penalties. "Where a statutory maximum is specified, courts may consider the

5  maximum statutory penalty available in determining whether the jurisdictional amount in controversy

6  requirement is met." *Naveja v. Primerica, Inc.*, -- WL --, \*- (E.D. Cal. May 17, 2021); *see also Chab-*

7  *ner v. United of Omaha Life Ins. Co*, 225 F.3d 1042. 1046 n.3 (9th Cir. 2000); *Korn v. Polo Raulth*

8  *Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Thus, Defendants have calculated the

9  amount in controversy using the maximum allowable civil penalty for each claim.

10       27.    Under PAGA, 75% of any civil penalties awarded are payable to the LWDA, and 25%

11  are recoverable by the named plaintiff. Cal. Lab. Code § 2699(i). Because of this, courts in the Ninth

12  Circuit are split on whether the amount in controversy for removal purposes constitutes 100% of po-

13  tential civil penalties, or only the 25% allocation recoverable by the named plaintiff. *Compare Mitchell*

14  *v. Grubhub Inc.*, 2015 WL 5096420, at \*6 (C.D. Cal. Aug. 28, 2015) (attributing 100% of potential

15  civil penalties to the amount in controversy) *with Rael v. Intercontinental Hotels Grp. Res., Inc.*, 2019

16  WL 990432, at \*2 (C.D. Cal. Mar. 1, 2019) (calculating the amount in controversy as only the 25%

17  recoverable by the plaintiff). It makes no difference which standard is applied in this case. Whether

18  the amount in controversy is based on the full amount of Plaintiff's alleged damages, or only 25% of

19  that amount, the total far exceeds the jurisdictional threshold. While the Court may consider the full

20  damages applicable to the alleged claims for purposes of removal, even 25% of that amount is more

21  than sufficient to satisfy the required amount.

22       28.    In light of the numerous individual Labor Code provisions under which Plaintiff seeks

23  to recover PAGA penalties, Plaintiff's individual claim for penalties and attorneys' fees puts more than

24  $75,000 in controversy, exclusive of interest and costs. 28 U.S.C. § 1446(c)(2); *see also* Compl. ¶ 1;

25  LWDA Notice Letter at 3 (seeking to recover penalties for alleged violations of Labor Code §§ 201,

26  202, 203, 204, 218.5, 224, 226(a), 226.3, 226.7, 226.8, 510, 512(a), 558, 1174(d), 1194, 1197, 1197.1,

27  1198, 2800, and 2802). Solely for purposes of removal, we summarized the minimum amount in con-

28  troversy for each of Plaintiff's alleged claims in the chart below. As even 25% of the alleged value of

Gibson, Dunn &
Crutcher LLP

9

DEFENDANTS' NOTICE OF REMOVAL

those claims exceeds $75,000, we used that most conservative approach to illustrate these calculations. In the paragraphs that follow, we discuss each alleged PAGA claim and the full range of potential damages pertinent to the jurisdictional analysis.

| Plaintiff's Claim | Minimum Amount in Controversy |
|---|---|
| **Minimum Wage – Cal. Lab. Code § 1194** | $ 1,000 |
| **Minimum Wage – Cal. Lab. Code § 1197** | $ 1,000 |
| **Minimum Wage – Cal. Lab. Code § 1197.1** | $ 500 |
| **Overtime – Cal. Lab. Code § 510** | $ 250 |
| **Overtime – Cal. Lab. Code § 1198** | $ 1,000 |
| **Meal Periods – Cal. Lab. Code § 226.7** | $ 1,000- |
| **Meal Periods – Cal. Lab. Code § 512(a)** | $ 250 |
| **Rest Breaks – Cal. Lab. Code § 226.7** | $ 1,000 |
| **Rest Breaks – Cal. Lab. Code § 512(a)** | $ 250 |
| **Failure to Timely Pay Wages During Employment – Cal. Lab. Code § 204** | $ 500 |
| **Failure to Timely Pay Wages Upon Separation – Cal. Lab. Code § 203** | $ 720 |
| **Complete and Accurate Wage Statements – Cal. Lab. Code § 226** | $ 487.50 |
| **Failure to Maintain Records – Cal. Lab. Code § 1174** | $ 25 |
| **Failure to Reimburse Business Expenses – Cal. Lab. Code § 2800** | $ 1,000 |
| **Failure to Reimburse Business Expenses – Cal. Lab. Code § 2802** | $ 1,000 |
| **Willful Misclassification – Cal. Lab. Code § 226.8** | $ 16,250 |
| **Fees Charged – Cal. Lab. Code § 450** | $ 250 |
| **Fees Charged – Cal. Lab. Code § 226.8** | $ 90,000 |
| **Attorneys' Fees** | $29,120.62 |
| **Total:** | **$145,603.12** |

i.      **Alleged Failure to Pay Minimum Wage – Cal. Labor Code §§ 1194, 1197, and 1197.1**

29.     Plaintiff alleges that "[a]s a policy and practice," Defendants "failed to compensate Plaintiff . . . for all hours worked, resulting in a failure to pay all minimum wages."  Compl. ¶ 19.  Plaintiff's complaint alleges that this violates California Labor Code §§ 1194 and 1197.  Compl. ¶ 18.

30.     Neither Labor Code sections 1194 nor 1197 have separately specified penalties, so both are subject to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of $100 for initial violations.  *See Flowers v. L.A. Cnty. Metro. Transp. Authority*, 243 Cal. App. 4th 66, 86 (2015).  Therefore, assuming one alleged minimum wage violation per workweek, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 1194 are at least $4,000 ($100 x 40).  Applying 25% of these penalties potentially recoverable by Plaintiff yields $1,000 toward the amount in controversy.

31.     Moreover, Plaintiff alleges that each alleged minimum wage violation also violates section 1197, which places at least an additional $4,000 ($100 x 40) of potential penalties at issue.  Applying 25% of these penalties potentially recoverable by Plaintiff yields $1,000 toward the amount in controversy.

32.     Plaintiff also seeks civil penalties under California Labor Code § 1197.1.  Compl. ¶ 34.  Plaintiff's LWDA Notice Letter, which is attached to and incorporated by reference into the Complaint (Compl. ¶ 16), alleges that Defendants' alleged failure to pay minimum wages violated California Labor Code § 1197.1 (LWDA Notice Letter at 6).  Section 1197.1 imposes specified civil penalties for failure to provide minimum wages at $100 per two-week pay period for initial violations and $250 per pay period for each subsequent violation. Cal. Lab. Code § 1197.1(a).  An assumed rate of one alleged minimum wage violation per week puts 20 potential section 1197.1 violations in controversy.  Thus, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 1197.1 are at least $2,000 ($100 x 20 two-week pay periods).  Applying 25% of these penalties potentially recoverable by Plaintiff yields $500 toward the amount in controversy.

33.     Therefore, Plaintiff's minimum wage claims put at least a total of $2,500 in individual PAGA penalties at stake toward the amount in controversy.

1

       **ii.**    **Alleged Failure to Pay Overtime Wages – Cal. Labor Code §§ 510 and 1198**

2

       34.    Plaintiff alleges that "[a]s a policy and practice," Defendants "failed to compensate

3 Plaintiff . . . for all hours worked, resulting in a failure to pay all . . . overtime wages."  Compl. ¶ 19.

4 Plaintiff further alleges that "Mr. Padilla . . . *routinely* worked in excess of" the overtime thresholds

5 but was not compensated for that time.  Compl. Ex. 1 at 4 (emphasis added).  Plaintiff's complaint

6 alleges that this violates California Labor Code §§ 510 and 1198.  Compl. ¶ 18.

7

       35.    Violations of Labor Code § 510 are subject to the specific penalties set forth in section

8 558(a)(1)-(2), which are set at $50 per two-week pay period for initial violations and $100 per pay

9 period for each subsequent violation.  An assumed rate of one alleged overtime violation per week puts

10 20 potential section 510 violations in controversy.  Thus, the potential penalties attributable to Plain-

11 tiff's individual claims under Labor Code § 510 are at least $1,000 ($50 x 20 two-week pay periods).

12 Applying 25% of these penalties potentially recoverable by Plaintiff yields $250 toward the amount in

13 controversy.

14

       36.    Labor Code § 1198 does not carry separately specified penalties, so violations are sub-

15 ject to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of

16 $100 for initial violations and $200 for each subsequent violation.  Therefore, assuming one alleged

17 overtime violation per workweek, the potential penalties attributable to Plaintiff's individual claims

18 under Labor Code § 1198 are $4,000 ($100 x 40).  Applying 25% of these penalties potentially recov-

19 erable by Plaintiff yields $1,000 toward the amount in controversy.

20

       37.    Therefore, Plaintiff's overtime claims put at least a total of $1,250 in individual PAGA

21 penalties at stake toward the amount in controversy.

22

       **iii.**    **Alleged Failure to Provide Meal Periods – Cal. Labor Code §§ 226.7 and 512(a)**

23

       38.    Plaintiff alleges that "[a]s a policy and practice," Defendants "failed to provide Plaintiff

24 . . . with legally-mandated meal periods."  Compl. ¶ 21.  Plaintiff's complaint alleges that this violates

25 California Labor Code §§ 226.7 and 512(a).  Compl. ¶ 20.

26

       39.    Labor Code § 226.7 does not carry separately specified penalties, so violations are sub-

27 ject to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of

28 $100 for initial violations and $200 for each subsequent violation.  Therefore, assuming one alleged

meal period violation per workweek, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 226.7 are $4,000 ($100 x 40). Applying 25% of these penalties potentially recoverable by Plaintiff yields $1,000 toward the amount in controversy.

40.     Violations of Labor Code § 512(a) are subject to the specific penalties set forth in section 558(a)(1)-(2), which are set at $50 per two-week pay period for initial violations and $100 per pay period for each subsequent violation. An assumed rate of one alleged meal period violation per week puts 20 potential section 512(a) violations in controversy. Thus, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 512(a) are at least $1,000 ($50 x 20 two-week pay periods). Applying 25% of these penalties potentially recoverable by Plaintiff yields $250 toward the amount in controversy.

41.     Therefore, Plaintiff's meal period claims put at least a total of $1,250 in individual PAGA penalties at stake toward the amount in controversy.

### iv.     Alleged Failure to Provide Rest Breaks – Cal. Labor Code §§ 226.7 and 512(a)

42.     Plaintiff alleges that "[a]s a policy and practice," Defendants "failed to provide Plaintiff . . . with legally-mandated . . . rest breaks." Compl. ¶ 21. Plaintiff's complaint alleges that this violates California Labor Code §§ 226.7 and 512(a). Compl. ¶ 20.

43.     Labor Code § 226.7 does not carry separately specified penalties, so violations are subject to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of $100 for initial violations and $200 for each subsequent violation. Therefore, conservatively assuming one alleged rest break violation per workweek, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 226.7 are $4,000 ($100 x 40). Applying 25% of these penalties potentially recoverable by Plaintiff yields $1,000 toward the amount in controversy.

44.     Violations of Labor Code § 512(a) are subject to the specific penalties set forth in section 558(a)(1)-(2), which are set at $50 per pay period for initial violations and $100 per pay period for each subsequent violation. An assumed rate of one alleged rest period violation per week puts 20 potential section 512(a) violations in controversy. Thus, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 512(a) are at least $1,000 ($50 x 20 two-week pay periods).

1  Applying 25% of these penalties potentially recoverable by Plaintiff yields $1,000 toward the amount

2  in controversy.

3       45.    Therefore, Plaintiff's rest break claims put at least a total of $1,250 in individual PAGA

4  penalties at stake toward the amount in controversy.

5       **v.**    **Alleged Failure to Timely Pay Wages During Employment – Cal. Labor Code**

6               **§ 204**

7       46.    Plaintiff alleges that Defendants "failed to pay Plaintiff . . . all wages due and owing to

8  them within the required time period."  Compl. ¶ 23.  Plaintiff's complaint alleges that this violates

9  California Labor Code § 204, which requires "wages . . . earned by any person in any employment" to

10  be paid "twice during each Calendar month."  Compl. ¶ 20; Cal. Lab. Code § 204(a).

11       47.    Labor Code § 204 does not carry separately specified penalties, so violations are subject

12  to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of $100

13  for initial violations and $200 for each subsequent violation.  Therefore, assuming two alleged viola-

14  tions per calendar month (20 violations total), the potential penalties attributable to Plaintiff's individ-

15  ual claims under Labor Code § 204 are $2,000 ($100 x 20).  Applying 25% of these penalties potentially

16  recoverable by Plaintiff yields $500 toward the amount in controversy.

17       **vi.**    **Alleged Failure to Timely Pay Wages Upon Termination – Cal. Labor Code § 203**

18       48.    Plaintiff alleges that Defendants "failed to pay Plaintiff . . . their final wages" and there-

19  fore that Defendants owe Plaintiff "waiting time penalties pursuant to Labor Code § 203."  Compl.

20  ¶ 25.

21       49.    Labor Code § 203 imposes a maximum civil penalty of 30 days' of a worker's average

22  daily wage.  Plaintiff does not allege his average daily wage, but the state minimum wage was at least

23  $12.00 per hour for the entirety of the time period alleged in the complaint.  *See* Cal. Dep't Indus. Rels.,

24  MW-2019 Minimum Wage Order, *available at* https://www.dir.ca.gov/Iwc/MW-2019.pdf.  Assuming

25  a standard 8 hour workday at the minimum wage, Plaintiff's average daily wage would be $96.00, and

26  the potential penalties attributable to Plaintiff's individual claims under Labor Code § 203 are at least

27  $2,880 ($96.00 x 30).  Applying 25% of these penalties potentially recoverable by Plaintiff yields $720

28  toward the amount in controversy.

vii.     **Alleged Failure to Provide Complete and Accurate Wage Statements and Main-
tain Records – Cal. Lab. Code §§ 226 and 1174**

50.     Plaintiff alleges that Defendants "failed in their affirmative obligation to keep accurate records regarding Plaintiff." Compl. ¶ 27. Plaintiff alleges that this violates California Labor Code §§ 226 and 1174. Compl. ¶ 26.

51.     Labor Code § 226 requires an employer to furnish a pay statement containing certain information on at least a bi-monthly basis. Cal. Lab. Code § 226(a). Section 226 imposes a civil penalty of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." *Id.* § 226(e)(1). Therefore, assuming two alleged violations per calendar month (20 violations total), the potential penalties attributable to Plaintiff's individual claims under Labor Code § 204 are $1,950 ($50 x 1 + $100 x 19).[5] Applying 25% of these penalties potentially recoverable by Plaintiff yields $487.50 toward the amount in controversy.

52.     Labor Code § 1174 requires a business to maintain certain records pertaining to employees. Labor Code § 1174 does not carry separately specified penalties, so violations are subject to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of $100 for initial violations and $200 for each subsequent violation. Therefore, assuming that Plaintiff's allegation that Defendants failed to maintain required records constitutes a singular continuing violation of section 1174, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 1174 are $100. Applying 25% of these penalties potentially recoverable by Plaintiff yields $25 toward the amount in controversy.

53.     Therefore, Plaintiff's recordkeeping and wage statement claims put at least a total of $512.50 in individual PAGA penalties at stake toward the amount in controversy.

---

[5]  The Ninth Circuit's recent holding in *Bernstein* explaining that "subsequent violation" PAGA penalties do not arise until after receipt of an adverse court order or Labor Commissioner notice, *Bernstein*, 990 F.3d at 1173, is not applicable to section 226. Unlike the statute at issue in *Bernstein*, section 226 specifically imposes a heightened penalty for "each violation in a *subsequent pay period*" after the initial violation. Cal. Lab. Code § 226(e)(1) (emphasis added).

### viii.   Alleged Failure to Reimburse Business Expenses – Cal. Lab. Code §§ 2800 and 2802

54.      Plaintiff alleges that "[a]s a policy and practice," Defendants "failed to pay Plaintiff . . . all business expenses incurred and owing them."  Compl. ¶ 29.  Plaintiff alleges that this violates California Labor Code §§ 2800 and 2802.  Compl. ¶ 28.

55.      Labor Code § 2800 does not carry separately specified penalties, so violations are subject to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of $100 for an initial violation and $200 for each subsequent violation.  Therefore, assuming one alleged unlawfully unreimbursed expense violation per workweek, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 2800 are $4,000 ($100 x 40).  Applying 25% of these penalties potentially recoverable by Plaintiff yields $1,000 toward the amount in controversy.

56.      Labor Code § 2802 also does not carry separately specified penalties, so violations are subject to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of $100 for an initial violation and $200 for each subsequent violation.  Therefore, assuming one alleged unlawfully unreimbursed expense violation per workweek, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 2802 are $4,000 ($100 x 40).  Applying 25% of these penalties potentially recoverable by Plaintiff yields $1,000 toward the amount in controversy.

57.      Therefore, Plaintiff's unreimbursed expense claims put at least a total of $2,000 in individual PAGA penalties at stake toward the amount in controversy.

### ix.   Alleged Willful Misclassification – Cal. Lab. Code § 226.8(a)(1)

58.      Plaintiff also seeks civil penalties under California Labor Code § 226.8, which imposes civil penalties for "willful misclassification of an individual as an independent contractor."  Cal. Lab. Code § 226.8(a); Compl. ¶¶ 1, 6, 13.  Specifically, Plaintiff's LWDA Notice Letter, which is attached to and incorporated by reference into the Complaint (Compl. ¶ 16), alleges that Defendants "violated Labor Code section 226.8 . . . by willfully misclassifying Mr. Padilla" (LWDA Notice Letter at 6).

59.      Section 226.8 imposes civil penalties of up to $15,000 per violation, "in addition to any other penalties or fines permitted by law."  Cal. Lab. Code § 226.8(b).  Therefore, Plaintiff's claim that

Gibson, Dunn & Crutcher LLP

DEFENDANTS' NOTICE OF REMOVAL

he has been willfully misclassified carries potential penalties of $15,000.  Applying 25% of these penalties potentially recoverable by Plaintiff yields $3,750 toward the amount in controversy.

60.     Moreover, Plaintiff alleges that his willful misclassification was part of what he alleges to be a "systemic illegal employment practice[]."  Compl. ¶ 2.  Labor Code § 228.6 also imposes an additional penalty on any employer who willfully misclassifies an employee as part of "a pattern or practice" in an amount of up to $25,000 "in addition to any other penalties or fines permitted by law." *Id.* § 226.8(c).  Therefore, Plaintiff's claim that he has been willfully misclassified in connection with a "systemic illegal employment practice[]" carries potential penalties of $25,000.  Applying 25% of these penalties potentially recoverable by Plaintiff yields $12,500 toward the amount in controversy.

61.     Therefore, Plaintiff's willful misclassification claims put at least a total of $16,250 in individual PAGA penalties at stake toward the amount in controversy.

**x.      Alleged Fees Charged to Misclassified Workers – Cal. Lab. Code §§ 450 and 226.8(a)(2)**

62.     Plaintiff's LWDA Notice Letter, which is attached to and incorporated by reference into the Complaint (Compl. ¶ 16), alleges that Defendants "required Mr. Padilla . . . to patronize Primerica, including paying an application fee for applying for employment . . . and a monthly subscription fee for continued employment" (LWDA Notice Letter at 6).

63.     Plaintiff alleges that this violates California Labor Code § 450, which states that "[n]o employer . . . may compel or coerce any employee, or applicant for employment, to patronize his or her employer . . . in the purchase of any thing of value."  Cal. Lab. Code § 450.  Labor Code § 450 does not carry separately specified penalties, so violations are subject to the default provision in California Labor Code § 2699(f)(2), which provides for a penalty of $100 for initial violations and $200 for each subsequent violation.  Therefore, assuming penalties for 1 alleged unlawful "application fee" and 1 alleged unlawful "monthly subscription fee" per month for 9 months (10 penalties total), the potential penalties attributable to Plaintiff's individual claims under Labor Code § 450 are $1,000 ($100 x 10).  Applying 25% of these penalties potentially recoverable by Plaintiff yields $250 toward the amount in controversy.

64.     California Labor Code § 226.8 also imposes civil penalties for "[c]harging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose." Cal. Lab. Code § 226.8(a)(2). Section 226.8 imposes civil penalties of up to $15,000 per violation, "in addition to any other penalties or fines permitted by law." Cal. Lab. Code § 226.8(b). Therefore, assuming penalties for 1 alleged unlawful "monthly subscription fee" per month for 9 months, the potential penalties attributable to Plaintiff's individual claims under Labor Code § 226.8(a)(2) are $135,000 ($15,000 x 9). Applying 25% of these penalties potentially recoverable by Plaintiff yields $33,750 toward the amount in controversy.

65.     Moreover, Plaintiff alleges that his willful misclassification was part of what he alleges to be a "systemic illegal employment practice[]." Compl. ¶ 2. Labor Code § 226.8 imposes an additional penalty on any employer who charges a fee to a willfully misclassified employee as part of "a pattern or practice" in an amount of up to $25,000 "in addition to any other penalties or fines permitted by law." *Id.* § 226.8(c). Therefore, assuming penalties for 1 alleged unlawful "monthly subscription fee" per month for 9 months, Plaintiff's claim that he was charged unlawful fees and has been willfully misclassified in connection with a "systemic illegal employment practice[]" carries potential penalties of $225,000 ($25,000 x 9). Applying 25% of these penalties potentially recoverable by Plaintiff yields $56,250 toward the amount in controversy.

66.     Therefore, Plaintiff's fees charged to misclassified workers claims put at least a total of $90,250 in individual PAGA penalties at stake toward the amount in controversy.

**xi.     Attorneys' Fees**

67.     Plaintiff also seeks attorneys' fees. *See* Compl. ¶¶ 30, 36 (seeking "attorneys' fees").

68.     In the Ninth Circuit, post-removal attorneys' fees are included in the amount in controversy analysis. *See Green v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (noting that plaintiff sued for "compensatory damages, punitive damages, and *attorneys' fees*" which satisfied the amount in controversy requirement for CAFA) (emphasis added); *see also Castillo v. ABM Indus. Inc.*, 2017 WL 5609791, at *3 (C.D. Cal. Nov. 20, 2017) (noting that "recent cases in this district hold that post-removal attorneys' fees should be included") (collecting cases).

69.     "District courts within the Ninth Circuit handling PAGA cases have held that 'removing defendants can reasonably assume plaintiffs are entitled to attorney[s'] fees valued at approximately 25% of projected damages.'" *Olson v. Michaels Stores, Inc.*, 2017 WL 3317811, at *3 (C.D. Cal. Aug. 2, 2017) (citing *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *6 (N.D. Cal. July 10, 2014). It is therefore anticipated that Plaintiff's attorneys will seek at least 25% of any amounts recovered as awardable attorneys' fees.

70.     As with PAGA penalties, district courts within the Ninth Circuit only apply the named plaintiff's individual share of attorneys' fees toward the amount in controversy. *See, e.g., Olson*, 2017 WL 3317811, at *5. Courts in this district have calculated a PAGA plaintiff's pro rata share of attorneys' fees as 25% of the total penalties attributable to the plaintiff's individual claims. *Cordero*, 2021 WL 1225952, at * 2 (denying motion to remand PAGA case where individual civil penalties placed $328,450 in controversy and attorneys' fees attributable to the individual plaintiff added a further $82,112.50—i.e., 25% of $328,450).

71.     As described above, the amount in controversy attributable to Plaintiff's individual civil penalties claims place a total of at least $116,482.50 in controversy. Accordingly, Defendants anticipate that Plaintiff's pro rata share of attorneys' fees would be at least $29,120.62 ($116,482.50 x 0.25).

72.     Altogether, the amount in controversy in Plaintiff's suit with respect to previously-incurred alleged penalties, plus anticipated attorneys' fees, is at least a minimum amount of $145,603.12, and therefore diversity jurisdiction is proper.

### III.     THE COURT HAS JURISDICTION AND REMOVAL IS PROPER

73.     Based on the foregoing facts and allegations, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because:

        1.     This is a civil action within the meaning of § 1332(a);

        2.     The properly named parties are "citizens of different States" as required by § 1332(a)(1); and

        3.     The amount in controversy exceeds $75,000 as required by § 1332(a).

Accordingly, this action is properly removable under 28 U.S.C. § 1441.

Gibson, Dunn &
Crutcher LLP

19

74.     This Notice of Removal is timely pursuant to 28 U.S.C. §§ 1446(b) and 1453(b) because it is filed within 30 days of service on Defendants, which occurred on April 23, 2021.

75.     The United States District Court for Central District of California is the federal judicial district in which the Riverside County Superior Court sits.  This action was originally filed in the Riverside Superior Court, rendering venue in this federal judicial district and division proper (*see* 28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a)).

76.     True and correct copies of the (a) Complaint, (b) Civil Case Cover Sheet, (c) Certificate of Counsel, (d) Summons, (e) Notice of Department Assignment, (f) Notice of Case Management Conference, (g) Proof of Service on Complaint, and (h) second Proof of Service on Complaint are attached as Exhibits A through H to the Lutz Declaration, filed concurrently herewith.  These filings constitute the complete record of all records and proceedings in the state court.

77.     Upon filing the Notice of Removal, Defendants will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Riverside County Superior Court, pursuant to 28 U.S.C. § 1446(d).


DATED: May 21, 2021

GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ
CHRIS WHITTAKER


By:   /s/ *Brian M. Lutz*
                Brian M. Lutz

Attorneys for Defendants

DEFENDANTS' NOTICE OF REMOVAL

Gibson, Dunn &
Crutcher LLP